UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUNICE RAQUEL FLORES THOMAS, on behalf of herself, individually, and on behalf of all others similarly-situated, | |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| AAM HOLDING CORP. d/b/a FLASHDANCERS GENTLEMEN'S CLUB, 59 MURRAY STREET ENTERPRISES, INC. d/b/a FLASHDANCERS GENTLEMEN'S CLUB, BARRY LIPSITZ, individually, and BARRY LIPSITZ, JR., individually, | Docket No.:    24-cv-7253  Jury Trial Demanded |
| Defendants. | |

EUNICE RAQUEL FLORES THOMAS, on behalf of herself, individually, and on behalf of all others similarly-situated, ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against AAM HOLDING CORP. d/b/a FLASHDANCERS GENTLEMEN'S CLUB ("AAM"), 59 MURRAY STREET ENTERPRISES, INC. d/b/a FLASHDANCERS GENTLEMEN'S CLUB ("59 Murray," individually, together where appropriate, as "Flashdancers"), BARRY LIPSITZ ("Lipsitz"), individually, and BARRY LIPSITZ, JR. ("Junior," individually, together, where appropriate, as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action based upon Defendants' collective violations of Plaintiff's rights guaranteed to her by: (i) the anti-sex discrimination of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); (ii) the anti-sex discrimination provisions of the New York State Human Rights Law ("NYSHRL"); (iii) the anti-sex discrimination provisions of the New York City Human Rights Law ("NYCHRL"); and (iv) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff, female, is a former employee of Defendants - - two New York corporations that operate as a single enterprise to run two Manhattan-based strip clubs and the enterprise's two owners and day-to-day overseers - - and she brings this action to seek redress for Defendants' sex discrimination against her during her employment. Specifically, as detailed herein, Defendants discriminated against Plaintiff due to her sex by subjecting her to a hostile work environment and *quid pro quo* sexual harassment, in violation of Title VII, the NYSHRL, and the NYCHRL.

3. Defendants treated all similarly situated employees in a similar manner, subjecting them to discrimination due to their sex by subjecting her to a hostile work environment and *quid pro quo* sexual harassment, in violation of Title VII, the NYSHRL, and the NYCHRL

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000e *et seq*. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over all state law and city law claims.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. On March 28, 2022, Plaintiff, on behalf of herself, individually, and on behalf of all others similarly-situated, filed a Class Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants, EEOC Charge Nos. 520-2023-01245 and 520-2023-01417, alleging sex discrimination based on the events alleged and under the statutes evoked herein.

7. On July 3, 2024, the EEOC issued a dismissal of charge and right to sue notice. Plaintiff commences this action within ninety days of receipt of that notice from the EEOC.

**PARTIES**

8. At all relevant times herein, Plaintiff worked for Defendants in New York and was a "person" and an "employee" entitled to protection as defined by Title VII, the NYSHRL, and the NYCHRL.

9. At all relevant times herein, Defendant AAM was and is a New York corporation with its principal place of business located at 320 West 45th Street, New York, New York 10036, which is registered with the New York State Department of State to receive service of process at that same address.

10. At all relevant times herein, Defendant 59 Murray was and is a New York corporation with its principal place of business located at 59 Murray Street, New York, New York 10007, which is registered with the New York State Department of State to receive service of process at that same address.

11. AAM and 59 Murray are employers within the meaning of Title VII, the NYSHRL, and the NYCHRL, as they employ more than fifteen and thus one or more employees.

12.     Although legally distinct entities, Defendants AAM and 59 Murray, in practice, operate as a single enterprise in that both entities are commonly owned and managed, are commonly controlled financially, and co-mingle employees.

13.     To that end, Defendants Lipsitz and Junior were and are the owners of Defendants AAM and 59 Murray, who in those roles personally supervise and manage the day-to-day operations of the strip clubs and the dancers, and instruct all managers, also known as "hostesses," as to the policies and employment practices of the strip clubs and the overall expectations of the dancers.

## RULE 23 CLASS ALLEGATIONS

14.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), on behalf of herself, individually, as well as on behalf of all those who are similarly-situated whom Defendant subjected to violations of Title VII during the applicable statutory period.

15.     Under FRCP 23(b)(3), a plaintiff must plead that:

   a.  The class is so numerous that joinder is impracticable;

   b.  There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

   c.  Claims or defenses of the representative are typical of the class;

   d.  The representative will fairly and adequately protect the class; and

   e.  A class action is superior to other methods of adjudication.

16.     Plaintiff seeks certification of the following FRCP 23 class:

   Current and former female employees, who during the applicable
   Title VII limitations period, performed any work for Defendants as
   a dancer, or in any other similar position ("Rule 23 Plaintiffs").

<u>Numerosity</u>

17. In addition to Plaintiff, there are at least forty women who were all dancers and who worked for Defendants at the same strip clubs, all of whom were subjected to a hostile work environment and *quid pro quo* sexual harassment by Defendants at various times throughout their employment.

18. During all times applicable to Title VII, Defendant has employed, in total, at least forty employees that are putative members of this class.

<u>Common Questions of Law and/or Fact</u>

19. There are common questions of law and fact that govern the claims of each and every Rule 23 Plaintiff and that predominate over any questions solely affecting individual members of the FRCP 23 class, including, but not limited to, the following: Defendants' behavior towards women who worked for Defendants; Defendants' employment policies and practices; and whether Plaintiff and/or others were forced to change in front of a camera and/or have sexual relations with customers as a condition of her/their employment.

<u>Typicality of Claims and/or Defenses</u>

20. As described in the "Background Facts" section below, Defendants employed Plaintiff and the Rule 23 Plaintiffs as dancers or in a similar role. Plaintiff's claims are typical of the class of workers whom she seeks to represent, as she, as described below - - like the rest of the class - - suffered sex discrimination at Defendants' hands.

<u>Adequacy</u>

21. Plaintiff, as described below, suffered the same sex discrimination as the Rule 23 Plaintiffs throughout her employment with Defendant. Plaintiff is no longer employed with Defendants and thus has no fear of retribution for her testimony. Plaintiff fully anticipates testifying under oath and providing discovery responses as to all of the matters raised in this

5

Complaint and that will be raised in Defendant's Answer that pertain to her. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

22. For that and other reasons, Plaintiff will fairly and adequately represent the interests of the class of women whom she seeks to represent, as she has no interests that are adverse to the potential class members.

23. Additionally, Plaintiff's counsel has substantial experience in this field of law.

<u>Superiority</u>

24. Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class. Indeed, at all relevant times herein, Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

25. Any lawsuit brought by any dancer employee of Defendant for the same violations alleged herein would be identical to a suit brought by any other similar employee for the same violations. Thus, separate litigation would risk inconsistent results.

26. Accordingly, the means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

**BACKGROUND FACTS**

27. Defendants AAM and 59 Murray are separate corporate entities that together operate two strip clubs in Manhattan, both of which do business and are known to the public as Flashdancers Gentleman's Club, one of which is located at 320 West 45th Street, and the other at 59 Murray Street. The two entities have common ownership and management and intermingle employees across both locations.

28. Plaintiff worked at Flashdancers, interchangeably at both locations, as a dancer, from in or around September 2019 until the end of July 2021. Indeed, Defendants were Plaintiff's

6

employers in that they set her hours, managed her schedule, including which location she was to work at on a given day, determined her pay, chose her outfits, directed her actions while on stage, and determined all other conditions and terms of employment. As her title suggests, Plaintiff danced at the strip clubs, either on stage, in private rooms, or in champagne rooms, and she agreed to do so with the understanding that she would be wearing little or no clothing.

29. However, changing in front of a video camera was not a part of Plaintiff's job duties, nor was it something that she agreed to do as a condition of her employment. Nonetheless, from the start of Plaintiff's employment with Defendants, Lipsitz and Junior, and the hostesses at their direction, demanded that Plaintiff, and all other dancers, change clothes in an open back room, without proper doors and/or lockers, called a fitting room, which was monitored by video, thereby making sure to capture and preserve video of Plaintiff, and all of the other dancers, getting fully or nearly naked before the beginning and after the end of each of her/their shifts.

30. Moreover, having sex with Defendants' customers was certainly not part of Plaintiff's duties as a dancer, nor something that she welcomed doing. Nevertheless, during the last few months of Plaintiff's employment, Defendants' hostesses - - Ramona (last name unknown), Candy (last name unknown), Taylor (last name unknown), Penny (last name unknown), and Blaise (last name unknown) - - pressured her to have sex with high-paying and recurring customers in the champagne rooms.

31. The hostesses made clear that refusing to go into the champagne rooms and have sex with these customers would have adverse consequences on her employment. Confirming this, when Plaintiff expressed her discomfort with the request on numerous occasions, sometime in April 2021, she noticed an immediate shift in attitude from the hostesses, in that they would stop

speaking or interacting with her for the remainder of her shift, thereby making her shifts uncomfortable and more difficult as part of her job required communication with the hostesses.

32. Towards the beginning of May 2021, Plaintiff went into one of the champagne rooms with a customer. On this occasion, while Plaintiff expected, and consented, to get completely naked, what she did not expect to do, nor did she consent to do, was watch a customer having sex, without a condom, with another dancer in the room.

33. Worse, during a brief interlude in the customer's sexual encounter with that other dancer, the customer propositioned Plaintiff to perform fellatio on him. Plaintiff first refused, but then relented only if the customer would wear a condom. She then performed fellatio on the customer, who was upset about having to wear a condom, until the customer ejaculated.

34. Plaintiff ultimately performed the act on the customer out of fear that a hostess would come into the room to check on the customer and then relay any dissatisfaction to Lipsitz or Junior.

35. During an occasion in June 2021, Plaintiff witnessed customers snorting lines of cocaine in the one of the champagne rooms, which had a camera recording. More disturbing was that one of the hostesses actually sold the cocaine to the customer. Lipsitz, Junior, and the hostesses had made clear that she was to do whatever the customers wanted. Thus, during this occasion, Plaintiff felt pressured to obey a customer's instruction to bend over while the customer snorted a line of cocaine off of her buttocks.

36. Were there ever any doubt amongst the dancers about the importance and requirement to service and please customers in the champagne rooms, Junior removed any such doubt in a meeting that he held with Plaintiff, the other dancers, and the hostesses in June or July 2021. During that meeting, Junior reiterated just how important use of the champagne rooms was

to the financial success of the strip clubs, noting that all dancers should and must be taking customers into the champagne rooms for any and all services requested by a customer.

37. During one of Plaintiff's shifts shortly after the meeting with Junior, Plaintiff went into one of the champagne rooms with one of the owners' close friends. Though Plaintiff only intended on performing a private lap dance for this particular customer, it became clear to her that she was expected to do more, not only because the customer was pressuring her - - by saying "I know you guys do this here," "I'm a close friend of the owners,'" and I'm going to report you" - - but also because the hostesses would come into the champagne room to check on whether Plaintiff was actually satisfying the customer. Stressed, pressured, and fearing for her job, Plaintiff performed fellatio on this particular customer, and only when the customer ejaculated was she allowed to leave the room.

38. After that incident, Plaintiff refused to work in private rooms or champagne rooms any longer.

39. Ultimately, all of what Defendants forced her to endure was too much to bear, and Plaintiff's employment was constructively terminated in or around the end of July 2021.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Sex Discrimination in Violation of Title VII*

40. Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

41. Title VII prohibits employers from discriminating against employees on the basis of their sex.

42. As described above, Defendants are employers within the meaning of Title VII, while Plaintiff and Rule 23 Plaintiffs are employees within the meaning of Title VII.

43. As also described above, Defendants discriminated against Plaintiff and Rule 23 Plaintiffs on the basis of their sex, in violation of Title VII, by subjecting Plaintiff and Rule 23 Plaintiffs to both *quid pro quo* and hostile work environment sexual harassment, and by denying them the opportunity to work in an employment setting free of unlawful discrimination.

44. As also described above, Defendants discriminated against Plaintiff and rule 23 Plaintiffs on the basis of their sex, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive sexual harassment against Plaintiff and Rule 23 Plaintiffs by their supervisors and coworkers.

45. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, monetary and/or non-economic damages, including, but not limited to, loss of past and future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

46. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff and Rule 23 Plaintiffs are entitled to an award of punitive damages.

47. Plaintiff and Rule 23 Plaintiffs are also entitled to attorneys' fees for Defendants' violations of Title VII.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Sex Discrimination in Violation of the NYSHRL*

48. Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. The NYSHRL prohibits sex discrimination and sexual harassment in any form, including subjecting an employee to a hostile work environment and/or *quid pro quo* sexual harassment.

50. As described above, Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYSHRL, while Defendants are considered employers within the meaning of the NYSHRL.

51. As also described above, Defendants discriminated against Plaintiff and Rule 23 Plaintiffs on the basis of sex, by subjecting Plaintiff and Rule 23 Plaintiffs to both *quid pro quo* and hostile work environment sexual harassment, in violation of the NYSHRL.

52. As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages for which they are entitled to an award of monetary damages and other relief.

53. As a direct and proximate result of these Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

54. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff and Rule 23 Plaintiffs are entitled to an award of punitive damages.

55. Plaintiff and Rule 23 Plaintiffs are also entitled to attorneys' fees.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Sex Discrimination in Violation of the NYCHRL*

56.     Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57.     The NYCHRL prohibits sex discrimination and sexual harassment in any form, including subjecting an employee to a hostile work environment and/or *quid pro quo* sexual harassment.

58.     As described above, Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYCHRL, while Defendants are considered employers within the meaning of the NYCHRL.

59.     As also described above, Defendants discriminated against Plaintiff and Rule 23 Plaintiffs on the basis of sex, by subjecting Plaintiff and Rule 23 Plaintiffs to both *quid pro quo* and hostile work environment sexual harassment, in violation of the NYCHRL.

60.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages for which they are entitled to an award of monetary damages and other relief.

61.     As a direct and proximate result of these Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

62. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

63. Plaintiff and Rule 23 Plaintiffs are also entitled to attorneys' fees.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Rule 23 Plaintiffs demand judgment against Defendants as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States, New York State, and New York City laws;

B. Granting an award of damages in an amount to be determined at trial to compensate Plaintiff and Rule 23 Plaintiffs for all monetary and/or economic damages in connection with their claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that they would have received but for Defendants' unlawful conduct;

C. Granting an award of damages to be determined at trial to compensate Plaintiff and Rule 23 Plaintiffs for emotional distress and/or mental anguish in connection with their claims;

D. Granting an award of damages to be determined at trial to compensate Plaintiff and Rule 23 Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment in connection with her claims;

E. Granting an award of punitive damages, to the extent permitted by law, commensurate with Defendants' ability to pay;

  F. Granting an award of reasonable attorneys' fees, as well as all costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

  G. Granting an award of pre-judgment and post-judgment interest, as provided by law; and

  H. Granting such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
   September 25, 2024

           Respectfully submitted,

           BORRELLI & ASSOCIATES, P.L.L.C.
           *Attorneys for Plaintiff*
           910 Franklin Avenue, Suite 205
           Garden City, New York 11530
           Tel. (516) 248-5550
           Fax. (516) 248-6027

By: _____
    SHARAN R. ABRAHAM (SA 1234)
    MICHAEL J. BORRELLI (MB 8533)